UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rick Hagen and Merhar's Ace Hardware, Inc. d/b/a Merhar Plumbing, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McAlpine & Co. Ltd. and Mountain Accessories Inc., d/b/a Mountain Plumbing Products,<br><br>Defendants. | Civil No. 14-1095 (DWF/LIB)<br><br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

Gordon C. Pineo, Esq., Deal & Pineo, PA; and Paul A. Sand, Esq., Mark A. Solheim, Esq., and Shawn M. Raiter, Esq., Larson King, LLP, counsel for Plaintiffs.

Heidi A. O. Fisher, Esq., Mary E. Johnson, Esq., and Patrick M. Fenlon, Esq., Oppenheimer Wolff & Donnelly LLP, counsel for Defendants.

**INTRODUCTION**

This case is before the Court on a Motion to Dismiss the First Amended Complaint brought by Defendants McAlpine & Co. Ltd. ("McAlpine & Co.") and Mountain Accessories Inc., d/b/a Mountain Plumbing Products ("MPP") (together, "Defendants"). (Doc. No. 18.) For the reasons discussed below, the Court grants in part and denies in part the motion.

# BACKGROUND

Defendants are both in the business of designing, manufacturing, and selling plumbing products. (Doc. No. 17, First Am. Class Action Compl. ("Am. Compl.") ¶¶ 4, 7.) Plaintiffs Rick Hagen ("Hagen") and Merhar's Ace Hardware, Inc., d/b/a Merhar Plumbing ("Merhar Plumbing") (together, "Plaintiffs") allege that Defendants manufacture certain angle valves that are the subject of this lawsuit. (*Id*. ¶¶ 13, 20.)

Plaintiffs allege that Hagen, through Merhar Plumbing, purchased five MPP angle valves bearing part number MT6003-NL/ORB (the "Valves") from Pipeline Supply, Inc. ("Pipeline"), an authorized distributor of MPP products. (*Id*. ¶¶ 53-54.) On August 1, 2012, Merhar Plumbing installed the five Valves on each toilet in Hagen's house. (*Id*. ¶ 55.) On October 19, 2012, one of the Valves failed in a second floor bathroom, allowing hundreds of gallons of water to leak into the house, and causing thousands of dollars in damage to the house and items located inside. (*Id*. ¶¶ 20, 56.) Plaintiffs allege that the body of one Valve cracked. (*Id*. ¶ 56.)

On October 22, 2012, Plaintiffs allege that a representative of Merhar Plumbing called a sales representative of Pipeline to inform them of the failed Valve. (*Id*. ¶ 60.) According to Plaintiffs, Pipeline advised Merhar Plumbing that it would research the problem. (*Id*. ¶ 61.) On November 27, 2012, Plaintiffs allege that Pipeline informed Merhar Plumbing that it should immediately remove all of the Valves in Hagen's house and asked Merhar Plumbing to return the Valves. (*Id*. ¶ 65.) Plaintiffs allege that representatives of Defendants contacted Merhar Plumbing by phone that same day, and admitted that the Valves were "defective." (*Id*. ¶¶ 66-68.) On November 28, 2012,

Merhar Plumbing removed all of the Valves from Hagen's house. (*Id.* ¶ 77.) At some point, Plaintiffs hired an expert to test the failed Valves. (*Id.* ¶¶ 82-83.) Plaintiffs assert that the Valves were manufactured using brass that is high in zinc content that prematurely degrades and fails through processes such as dezincification and stress corrosion cracking. (*Id.* ¶¶ 32-34, 82-84.)

On April 14, 2014, Plaintiffs filed this action. (Doc. No. 1, Compl.) Defendants moved to dismiss the Complaint. (Doc. No. 11.) On June 11, 2014, Plaintiffs filed an Amended Class Action Complaint and Demand for Jury Trial. (Am. Compl.) In their Amended Complaint, Plaintiffs allege the following causes of action: (1) Breach of Implied Warranty – Merchantability; (2) Breach of Express Warranties; (3) Negligence; (4) Negligent Failure to Warn; (5) Negligent Misrepresentation;[1] and (6) Declaratory and Injunctive Relief. (*See id.*) In addition, Plaintiffs purport to bring this lawsuit as a class action. (*See id.*) Defendants move to dismiss all claims. (*See* Doc. No. 11.)

## DISCUSSION

**I.   Motion to Dismiss**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory

---

[1]   Plaintiffs do not oppose the dismissal of their claim for Negligent Misrepresentation. (Doc. No. 27 at 33.) Therefore, Count Five is dismissed.

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Warranty Claims[2]

Plaintiffs assert claims for breach of both implied and express warranties. Defendants argue that Plaintiffs' warranty claims fail because Plaintiffs have not returned

---

[2] Throughout their Amended Complaint, Plaintiffs collectively refer to Defendants as "Mountain," without indicating which defendant committed the separate alleged acts. (*See* Am. Compl. ¶ 13.)

4

the Valves as required by the applicable warranty, the remedies available for breach of either express or implied warranties are limited by the terms of the warranty, and the damages Plaintiffs seek are excluded by the terms of the warranty. Because this action involves a commercial transaction for the sale of goods, the Minnesota Uniform Commercial Code applies. *See* Minn. Stat. § 336.2-106.

### A. Applicable Warranty

The parties do not agree on which express written warranty applies to the sale of the Valves. Plaintiffs allege that the following portion of a written warranty applies to the sale:

> **Mountain Plumbing Products Lifetime Warranty and Finish Limited Warranty**
>
> All Mountain Products carry a 1-year warranty on all working parts. (except disposers, see below.)
>
> Mountain Plumbing Products will repair or replace at their discretion, during the warranty period, any part or finish that proves defective in material and/or workmanship under normal installation, use and service.

(Am. Compl. ¶ 28.) This warranty, however, is not attached to the Amended Complaint and represents only an excerpt from the purported warranty. Further, Defendants assert that this particular warranty was located on a third-party website, is undated, and contains no indication of its source. (Doc. No. 21 ("Antoniello Decl.") ¶¶ 17, 18, Ex. B.) In addition, Defendants maintain that the document quoted in the Amended Complaint is not the official warranty that applies to the Valves. Instead, Defendants contend that at the time Plaintiffs purchased the Valves, MPP provided a different written warranty as part of the Terms and Conditions. (Antoniello Decl. ¶¶ 10-11, Ex. A (the "Terms and

5

Conditions").) In any event, Defendants acknowledge that the warranty cited by Plaintiffs is consistent "in many material respects" with the warranty that Defendants contend applies here. (*Id.* ¶ 19.)

The Court has reviewed the contents of both the warranty cited by Plaintiffs in their Amended Complaint and the Terms and Conditions submitted via affidavit by Defendants. As a practical matter, the actual terms of each warranty are consistent in material respects. The Court, however, agrees with Defendants that, to the extent that Plaintiffs rely on the warranty alleged in the Amended Complaint, Plaintiffs have only provided an unverified, undated, and incomplete version of an unsubmitted document without any factual allegations that would show that the warranty applied to the sale of the Valves.

Plaintiffs, however, also suggest that other warranties could "possibly" "apply, arguing that express warranties may be created "in a number of ways, including oral representation and product packaging." (Doc. No. 27 at 13.) Plaintiffs further submit that on a Rule 12 motion, the Court cannot determine what warranties were provided, and that such evidence will be developed in discovery. The Court disagrees. Plaintiffs have not properly pleaded that some other warranty (other than the written warranty) applies. Plaintiffs vaguely suggest that another warranty could *possibly* apply, but fail to specifically allege any facts to support that suggestion. Moreover, if Plaintiffs are alleging the creation of an express warranty via oral representation or product packaging, Plaintiffs must allege more than the "possibility" of such a warranty. Thus, for purposes

of this motion, the Court considers the Terms and Conditions submitted by Defendants, along with the warranty contained therein, to apply to the sale.[3]

### B. Limitation on Remedies and Exclusion of Damages

Under Minnesota law, parties to a contract for the sale of goods may limit a buyer's remedies for breach of implied and express warranties. *See* Minn. Stat. § 336.2 -719(1)(a) (providing that an agreement may limit the buyer's remedies); *id.* § 336.2-719(3) (providing that consequential damages may be limited or excluded unless the exclusion in unconscionable); *see also, e.g.*, *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1189 (D. Minn. 2001). Under Minnesota law, a limitation on consequential damages is enforceable unless it is unconscionable. *See* Minn. Stat. § 336.2-719(3); *Int'l Fin. Servs., Inc. v. Franz*, 534 N.W.2d 261, 269 (Minn. 1995). "The basic test is whether . . . the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Minn. Stat. § 362.2-302 cmt. 1.

---

[3] The Court considers both the full version of the warranty relied on by Plaintiffs (and submitted in full by Defendants) and the Terms and Conditions submitted by Defendants to be properly before the Court because they are necessarily embraced by the Amended Complaint. *See Porous*, 186 F.3d at 1079. In any event, treating the Terms and Conditions as the applicable agreement between the parties appears to be of no consequence because the material terms between the Terms and Conditions and the warranty submitted by Plaintiffs are largely consistent. For example, both contain: (1) a one-year warranty on all working parts; (2) a lifetime warranty on certain finishes; and (3) a provision excluding any incidental or consequential damages. (*Compare* Antoniello Decl., Ex. A *with* Antoniello Decl., Ex. B.)

Defendants assert that Plaintiffs' remedies and the availability of damages are limited by the Terms and Conditions. In support, Defendants rely on the following provisions of the Terms and Conditions:

> **WARRANTY:**
> *ALL MOUNTAIN PRODUCTS CARRY A ONE-YEAR WARRANTY ON ALL WORKING PARTS. (except disposers, see below).
>
> . . .
>
> **RETURN GOODS AUTHORIZATION:**
> *No returns of discontinued items other than defective will be allowed.
> *All goods being returned must have a return goods authorization number (RGA #) attached with the product.
> *Return authorizations must be requested in writing by Fax, Mail or Email . . . within 90 days of delivery.
>
> . . .
>
> *If an item is returned defective, and after inspection and/or testing is deemed not defective, no credit will be issued and the customer is responsible for freight charges.
>
> **LIABILITY:**
> *We are not responsible for any labor charges or any loss, injury or damages whatsoever, including incidental or consequential damages.

(Terms and Conditions at 1.1.)

In particular, Defendants assert that under the Terms and Conditions, Plaintiffs were required to return the Valves for a refund in order to initiate a warranty claim, and that the incidental and consequential damages that Plaintiffs seek are barred by the provision limiting liability. Plaintiffs counter that the provisions limiting remedies and damages are not enforceable because they are unconscionable and cause the express

warranties to fail their essential purpose.  Plaintiffs also assert that Defendants have not met their burden of showing that the limitations were provided at the time of sale.

Plaintiffs argue that the limitation on remedies and damages exclusion in the Terms and Conditions are unconscionable and cause the warranties to fail their essential purpose.  Specifically, Plaintiffs allege that the Valves were manufactured with defective materials (high zinc content) (Am. Compl. ¶ 32); that MPP knew or should have known that the use of the materials made the Valves susceptible to premature failure (*id.* ¶ 40); that high zinc content plumbing products were a known problem in the industry (*id.* ¶ 46); and that shortly after the failure of the Valve in Hagen's home, representatives of MPP conceded that the Valves were defective and that they knew of similar failures in other homes (*id.* ¶¶ 68-70).  The Court concludes that these allegations are sufficient at this stage of the litigation to preclude dismissal of Plaintiffs' warranty claims.  For example, if the allegations are proven to be true, Plaintiffs could demonstrate that Defendants knew of a defect in the Valves prior to their sale, thus potentially making a limitation on remedies or exclusion of damages unconscionable.  *See, e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293-94 (4th Cir. 1989) (holding district court erred by ruling limitations were reasonable solely on the basis of the pleadings).  Thus, at this early stage of litigation, the Court concludes that Plaintiffs' warranty claims survive Defendants' motion to dismiss.[4]

---

[4]  Whether a remedy fails an essential purpose or a damages limitation is unconscionable is often a fact question that should be decided on an evidentiary record.
(Footnote Continued on Next Page)

**III.   Negligence**

Plaintiffs also bring tort claims for negligence and negligent failure to warn. Specifically, Plaintiffs allege that Defendants were negligent in that they failed to use reasonable care when they created, marketed, and sold the Valves, and that Defendants owed a duty to Plaintiffs to provide a safe and quality product.  (Am. Compl. ¶¶ 135-36.)

The essential elements of a negligence claim are:  (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) breach of that duty; and (3) an injury proximately caused by the breach.  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).  To establish a negligent failure to warn claim under Minnesota law, a plaintiff must show that:  (1) the defendant had reason to know of the dangers of using the product; (2) "the warnings fell short of those reasonably required," thereby breaching the duty of care; and (3) the lack of an adequate warning caused the plaintiff's injuries. *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004).

Defendants argue that Plaintiffs' negligence claims must be dismissed because Plaintiffs have not alleged facts giving rise to an actionable duty.  Defendants submit, and Plaintiffs do not dispute, that Minnesota law does not recognize a duty of care in the design and manufacture of consumer goods when there is no allegation that the product is "unreasonably dangerous."  *See Minnesota Forest Prods., Inc. v. Ligna Mach., Inc.*,

---

(Footnote Continued From Previous Page)

*See, e.g.*, *Trinity Prods., Inc. v. Burgess Steel, LLC*, 486 F.3d 325, 332 (8th Cir. 2007); *Cargill, Inc. v. Prods. Eng'g Co.*, 627 F. Supp. 1492, 1498 (D. Minn. 1986).

17 F. Supp. 2d 892, 915 & n.14 (D. Minn. 1998) (finding no duty of care in design and manufacture of sawmill equipment, but recognizing that a manufacturer owed a duty not to manufacture "unreasonably dangerous" products); *see also Wilson v. Harris Corp.*, Civ. No. 3-92-711, 1993 WL 724813, at *2-3 (D. Minn. Oct. 20, 1993) (explaining issue in product defect case is whether design creates an "unreasonably dangerous" product) (citing *Bilotta v. Kelly Co., Inc.*, 346 N.W.2d 616, 621 (Minn. 1984)).  Similarly, in a failure to warn claim, a plaintiff must allege that a product is "unreasonably dangerous." *See In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, Civ. No. 11-2000, 2013 WL 1282219, at *7 (D.S.C. March 27, 2013) (applying Minnesota law).  Whether a product is unreasonably dangerous requires the balancing of several competing factors, including "the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Forslund v. Stryker Corp.*, Civ. No. 09-2134, 2010 WL 3905854, at *2 (D. Minn. Sept. 30, 2010) (citation omitted).

Plaintiffs acknowledge that they must show that the Valves were in a defective condition that was "unreasonably dangerous" for its intended use.  (Doc. No. 27 at 29.) Plaintiffs assert that whether a product is unreasonably dangerous is generally a question of fact, requiring consideration of all facts and circumstances.  Therefore, Plaintiffs submit that the Court cannot make a "reasoned decision" regarding the harm posed by the products in question at this stage of litigation.  In addition, Plaintiffs maintain that they have alleged substantial damage and that the water leak caused by the allegedly defective Valves presented a number of dangerous conditions, including the risk of electrical shock

11

or that "[s]uch water leaks can result in mold and other damage that can be harmful to the health of putative class members." (Am. Compl. ¶ 92.)

The Court concludes that Plaintiffs have not alleged sufficient facts to support a negligence claim. Plaintiffs' allegations that the Valves had a design defect that made them dangerous are based on speculative and conclusory allegations that leaks could lead to mold or electric shock. Plaintiffs' sparse allegations, even if taken as true, do not support a finding that the Valves were "unreasonably dangerous." Instead, Plaintiffs offer only naked assertions without factual support. *See, e.g.*, *Forslund*, 2010 WL 3905854, at *4 (finding that the complaint failed to allege sufficient facts to plead a plausible design defect claim, explaining that "[plaintiff's] claim boils down to an allegation that the [product] is defective and unreasonably dangerous in its design because it is "very likely" to cause serious harm"). Therefore, Counts Three and Four are dismissed.[5]

## IV. Declaratory and Injunctive Relief

In Count Six, Plaintiffs allege a cause of action for injunctive relief. Specifically Plaintiffs seek a declaration: (1) relating to various issues regarding limitations on remedies under the alleged warranties (Am. Compl. ¶ 163(a)-(d); (2) voiding any releases obtained by Defendants to the putative class (*id*. ¶ 163(e)); and (3) allowing offensive

---

[5] Because the Court concludes that Plaintiffs have failed to adequately allege a duty to support a negligence claim, the Court does not reach the issue of whether Plaintiffs' tort claims are barred by the economic loss doctrine.

12

collateral estoppel against Defendants for any adverse rulings against Defendants in this action (*id.* ¶ 163(f)).

To the extent that Plaintiffs seek relief that is intended to remedy an existing cause of action, the claim for injunctive relief is not proper. *See Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (dismissing claims for injunctive relief that are merely remedies, not separate causes of action). In their claim for injunctive relief, Plaintiffs either seek a declaration that duplicates allegations that Plaintiffs put forth in their substantive claims, or relief for the threat of future harm or recovery for controversies that have not yet occurred. These allegations are insufficient to support a separate claim for injunctive relief. The Court concludes that Count Six is properly dismissed.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [18]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Counts Three, Four, Five, and Six of Plaintiffs' Amended Complaint (Doc. No. [17]) are **DISMISSED WITH PREJUDICE**.

2. Counts One and Two of Plaintiffs' Amended Complaint (Doc. No. [17]) remain.

Dated:  January 26, 2015                    s/Donovan W. Frank
                                                                          DONOVAN W. FRANK
                                                                          United States District Judge